## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **GREGORY JANKOWSKI** )<br>7149 S. Erie Avenue, Apt. # 2013 )<br>Tulsa, Oklahoma 74136 ) | **CASE NO.:** |
| ) | Complaint |
| **PLAINTIFF,** )<br>) | **JUDG** TIMOTHY MCCORMICK<br>CV 12 775180 |
| **v.** )<br>) | |
| **VAN SCOY HAIR CLINIC, INC.** )<br>5592 Broadview Road, )<br>Cleveland, Ohio 44134 ) | |
| ) | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |
| **and** )<br>) | |
| **PAI MEDICAL GROUP, INC.** )<br>812 Proctor Avenue )<br>Ogdensburg, New York 13669 ) | |
| ) | |
| **and** )<br>) | |
| **MERCK & CO., INC.** )<br>One Merck Drive )<br>Whitehouse Station, New Jersey 08889 ) | **FIRST SET OF WRITTEN**<br>**DISCOVERY ATTACHED**<br>**HERETO** |
| ) | |
| **and** )<br>) | |
| **MERCK SHARP & DOHME CORP.** )<br>One Merck Drive )<br>Whitehouse Station, New Jersey 08889 ) | |
| ) | |
| ) | |
| ) | |
| **DEFENDANTS.** ) | |

COMES NOW, Plaintiff GREGORY JANKOWSKI, by and through his attorneys,

Theodore E Laszlo, Jr. and Jeffrey O. Klein, and as his Complaint against the Defendants states

and alleges as follows:

## PARTY PLAINTIFF

1. Plaintiff Gregory Jankowski is a 42 year old male who, at times relevant to the events described herein, was a resident of Cuyahoga County, residing at 6711 Ridgewood Avenue, Parma, Ohio 44129 and recently moved to 7149 S. Erie Avenue, Apt. # 2013, Tulsa, Oklahoma 74136 in April, 2011.

## PARTIES DEFENDANT

2. Defendant Merck & Co., Inc. (along with Defendant Merck Sharp & Dohme Corp. collectively referred to as "Merck" herein) is a corporation organized and existing under the laws of the state of New Jersey, having its principal place of business at One Merck Drive, Whitehouse Station, New Jersey 08889. Merck & Co., Inc. is a global pharmaceutical company which transacted business in the state of Ohio by advertising, soliciting, marketing, promoting, distributing, and selling its prescription drugs, including Propecia® (one mg. tablet of finasteride) and/or Proscar (five mg. tablet of finasteride), to purchasers, including Plaintiff, in the state of Ohio.

3. Defendant Merck Sharp & Dohme Corp. ("Merck Sharp Dohme" when specifically referred to individually or, along with Defendant Merck & Co., Inc., collectively referred to as "Merck" herein) is a subsidiary of Merck & Co., Inc. and is a corporation incorporated under the laws of the state of New Jersey, having its principal place of business at One Merck Drive, Whitehouse Station, New Jersey 08889. Merck Sharp & Dohme Corp. is the owner of the registered trademark for Propecia and Proscar. Merck Sharp & Dohme Corp. is the distributor of Propecia

2

and Proscar, including distributing and selling Propecia and Proscar in the state of Ohio.

4.  Defendant Van Scoy Hair Clinic, Inc. ("Van Scoy") is a corporation organized and existing under the laws of the state of Ohio, having its principal place of business at 608 Claremont Avenue, Ashland, Ohio 44805. Van Scoy has at least three business locations in the state of Ohio, including a location at 5592 Broadview Road, Cleveland, Ohio 44134, where Plaintiff was a customer and where Plaintiff purchased Propecia. Van Scoy is a supplier of Propecia through its various office locations and advertises and markets Propecia on its website.

5.  Defendant PAI Hair Group, Inc. ("PAI") is a New York corporation organized and existing under the laws of New York, with its corporate office at 812 Proctor Avenue, Ogdensburg, New York 13669. PAI maintains numerous hair clinics across the United States, including a location in Cleveland, Ohio where Plaintiff was a customer. PAI lists its "PAI Cleveland" office as 5592 Broadview Road, Parma, Ohio 44134. "PAI Cleveland" is where Plaintiff was a customer and where Plaintiff purchased Propecia. PAI is a supplier of Propecia through its various office locations.

## JURISDICTION AND VENUE

6.  Plaintiff was a resident of Cuyahoga County, Ohio previously residing at 6711 Ridgewood Avenue, Parma, Ohio 44129 and is currently a resident of Tulsa County, Oklahoma residing at 7149 S. Erie Ave., Apt. #2013, Tulsa, Oklahoma 74136. Defendants Merck are New Jersey corporations with their principal places of business in the state of New Jersey. Defendants Merck transact business in the state

3

of Ohio. Defendant Van Scoy is an Ohio corporation with its principal place of business in the state of Ohio. PAI is a New York corporation that transacts business in the state of Ohio at its hair clinic located in Cleveland, Ohio.

7. This Court has jurisdiction over all Defendants under Ohio common law and the Ohio Revised Code. At all times relevant to Plaintiff's Complaint, Defendant Van Scoy was an Ohio corporation with a principal place of business in the state of Ohio; all Defendants have conducted and transacted business in the state of Ohio; and all Defendants have committed tortious acts within this State and/or have otherwise performed acts within this State giving rise to injuries and losses within this State, which acts subject each Defendant to the jurisdiction of the courts of Ohio.

8. Venue lies in the Court of Common Pleas, Cuyahoga County, because Defendant Van Scoy and PAI conducted the activity which gave rise to the claims alleged by Plaintiff within Cuyahoga County; Plaintiff resided in Cuyahoga County where the acts that gave rise to the claims alleged by Plaintiff occurred; and Defendant Van Scoy and PAI's place of business is in Cuyahoga County where Plaintiff was a customer and where Plaintiff purchased Propecia.

9. The amount of damages sought by the Plaintiff exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## COMMON FACTUAL ALLEGATIONS

10. On or about December 1996, Merck filed New Drug Application ("NDA") No. 20-788. The finasteride tablets described in NDA No 20-788 are prescribed for the treatment of male pattern baldness and sold in the United States under the trade name "PROPECIA®". The United States Food & Drug Administration ("FDA")

4

first granted approval for 1 mg, including the active ingredient finasteride, for male pattern hair loss in December 1997.

11. Propecia contains 1 mg of the active ingredient, finasteride, and is a lower dose version of Merck's Proscar, which contains 5 mg of finasteride. Merck markets Proscar for the treatment of symptomatic benign prostate enlargement.

12. Proscar went off patent and lost its market exclusivity in the United States in June 2006. As a result, Merck realized a significant decline in U.S. Proscar sales. While the basic patent for Proscar also covers Propecia, additional patents that do not expire until October 2013 continue to protect Merck's market exclusivity for Propecia.

13. Defendants Merck market Propecia as a prescription drug treatment for male pattern hair loss.

14. Male pattern hair loss is neither an illness nor a disease; rather, it is a healthy normal occurrence.

15. Male pattern hair loss or baldness is a naturally occurring normal male phenomenon. Testosterone driven male pattern hair loss is attributed to a combination of genetic factors and a hormone, called dihydrotestosterone (DHT). DHT is believed to contribute to shortening the growth phase of and to thinning of the hair.

16. Merck claims finasteride is a type II 5-Alpha reductase inhibitor that prevents the conversion of androgen testosterone to DHT in the scalp leading to a reduction of hair loss.

17. Because male pattern hair loss is a cosmetic concern for men and neither an illness nor a disease, Merck developed and implemented a direct-to-consumer marketing

5

and advertising campaign focused at men who had experienced or were experiencing male pattern hair loss.

18.  In describing its direct-to-consumer advertising and marketing strategy for Propecia, Merck's Dermatology Therapeutic Business Group identified Propecia as a "cosmeceutical" product.

19.  In 1998, Merck spent $60 million in a direct-to-consumer advertising campaign for Propecia.  In 1999, Merck spent $125 million in direct-to-consumer advertising for Propecia.  In recent years, Merck has spent upwards of a billion dollars per year advertising its various drugs.

20.  Sales of Propecia have consistently increased over the past decade: $239MM in 2003; $270MM in 2004; $291MM in 2005; $351MM in 2006; $405MM in 2007; $429MM in 2008; $440MM in 2009 and $447MM in 2010.

21.  At all times relevant to Plaintiff's Complaint, Merck did not warn consumers that the use of Propecia to treat male pattern hair loss could result in permanent sexual dysfunction.

22.  In fact, Defendants Merck, at their marketing and information website for Propecia, www.propecia.com, deny and downplay the serious adverse sexual events associated with the use of Propecia to treat male pattern hair loss in healthy men.

23.  At www.propecia.com, Defendants Merck state that hair loss reversal may not be immediate but may take an extended period of time even up to one year to see noticeable hair restoration results.  Merck encourages users of Propecia to "stick with it."

24.  At www.propecia.com, under the tab "Possible Side Effects," Merck represents:

6

A small number of men had sexual side effects, with each occurring in less than 2% of men. These include less desire for sex, difficulty in achieving an erection, and a decrease in the amount of semen. These side effects went away in men who stopped taking PROPECIA because of them. In addition, these side effects decreased to 0.3% of men or less by the fifth year of treatment.

25. The Propecia entry in the Physician's Desk Reference ("PDR"), an annual, commercially published compilation of manufacturers' prescribing information, written and submitted by Defendants Merck have consistently stated that while Propecia users have experienced adverse experiences, particularly sexual, these side effects resolve once a user stops taking Propecia:

**What are the possible side effects of PROPECIA?**

Like all prescription drugs PROPECIA may cause side effects. In clinical studies, side effects from PROPECIA were uncommon and did not affect most men. A small number of men experienced certain sexual side effects. These men reported one or more of the following: less desire for sex; difficulty achieving an erection; and, a decrease in the amount of semen. Each of these side effects occurred in less than 2% of men. These side effects went away in men who stopped taking PROPECIA. They also disappeared in most men who continued taking PROPECIA.

26. Additionally, the Propecia PDR entry states:

Integrated analysis of clinical adverse experiences showed that during treatment with PROPECIA, 36 (3.8%) of 945 men had reported one or more of these adverse experiences as compared to 20 (2.1%) of 934 men treated with placebo (p=0.04). Resolution occurred in all who discontinued therapy with PROPECIA due to these side effects and in most of those who continued therapy. The incidence of each of the above side effects decreased $\leq 0.3\%$ by the fifth year of treatment with PROPECIA.

27. Further, as to adverse experiences involving ejaculate volume, the PDR entry for Propecia states:

In a study of finasteride 1 ml daily in healthy men, a median decrease in ejaculate volume of 0.3 mL (-11%) compared with 0.2 mL (-8%) for placebo was observed after 48 weeks of treatment. Two other studies showed finasteride at 5 times the

7

> dosage of PROPECIA (5 mg daily) produced significant median increases of approximately 0.5 mL (-25%) compared to placebo in ejaculate volume, but this was reversible after discontinuation of treatment.

28. These statements by Defendants Merck regarding Propecia are deceptive and misleading in that they fail to advise potential users of Propecia that numerous users of the product have reported suffering persistent and permanent sexual side effects even after discontinuing use.

29. In or about 2008, Merck changed the product warnings and instructions in Sweden to include the following warning:

> In addition, the following have been reported in post-marketing use: persistence of erectile dysfunction after discontinuation of treatment with PROPECIA.

30. In or about August 2009, the Swedish Medical Products Agency concluded that Propecia could lead to permanent erectile dysfunction.

31. Merck changed the Propecia product warnings and instructions in other European countries to include a warning of permanent erectile dysfunction as an adverse reaction. In the United Kingdom, Merck included the following warning:

> In addition, the following have been reported in postmarketing use: persistence of erectile dysfunction after discontinuation of treatment with PROPECIA; male breast cancer (see 4.4 Special warnings and precautions for use).

32. In Italy, Merck revised the Propecia product warnings and instructions in March 2010, to include a warning of persistent erectile dysfunction after discontinuation of treatment.

33. In March 2009, regarding Merck's online advertisement of Propecia, Merck stated: "Finasteride Treatment: You May be able to keep some of the hair that you

8

have....www.PROPECIA.com." In response to this advertisement, the FDA told

Merck:

**Omission of Risk Information**

These sponsored links make representations and/or suggestions about the efficacy of Januvia, Propecia, Singulair, and Emend, respectively, but fail to communicate any risk information. For promotional materials to be truthful and non-misleading, they must contain risk information in each part as necessary to qualify any claims made about the drug.

By omitting the most serious and frequently occurring risks associated with the drugs promoted in the links above, the sponsored links misleadingly suggest that Januvia, Propecia, Singulair, and Emend are safer than has been demonstrated. We note that these sponsored links contain a link to the products' websites. However, this is insufficient to mitigate the misleading omission of risk information from these promotional materials.

34. Though Merck revised the product monograph in the United States for finasteride on

October 6, 2010, these revisions did not include the updated warning regarding the

persistence of sexual dysfunction after discontinuation of use.

35. As a result of the use of finasteride as a treatment for male pattern hair loss, the FDA

has received numerous reports of side effects and adverse events related to sexual

dysfunction.

36. Recently published studies have revealed the true nature of the persistent side effects

of Propecia.

37. A 2003 study by *Wessels, et al.* reported that only 50-59% of men who experienced

sexual adverse effects after taking finasteride experienced resolution of the adverse

events even after discontinuing use of finasteride.

38. In December 2009, the United Kingdom Medicine Health Care Product Regulatory

Agency (MHRA) in its public assessment report on the risk of finasteride stated:

In addition, the following have been reported in post-marketing use: persistence of [erectile dysfunction] after discontinuation of treatment with PROPECIA.

9

39.   A 2011 article by *Traish*, *et al.* reported on the results of a seven year study:

Clearly, the sexual adverse events do not necessarily resolve completely in all patients, who discontinue use of finasteride, again supporting the premise that in some patients these sexual side effects remain "persistent."

5α-RIs therapy, while improving urinary symptoms in patients with BPH and may prevent hair loss, produce significant adverse effects in some individuals including loss of libido, ejaculatory dysfunction, and potential depression.

40.   A 2011 article by *Irwig, et al.* reported:

"The prevalence of sexual dysfunction by item was 94% for low libido, 92% for erectile dysfunction, 92% for decreased arousal, and 69% for problems with orgasm.  Most sexual dysfunction began while subjects were on finasteride, but some reported the onset shortly after discontinuing the medication.

...the mean duration of the persistent sexual side effects was 40 months, with 20% of subjects reporting durations of over 6 years.  Most men developed sexual dysfunction in multiple domains with 94% experiencing low libido, 92% experiencing erectile dysfunction, 92% experiencing decreased arousal, and 69% experiencing problems with orgasm.

41.   Physicians who treat men's health issues in the United States and Europe have publically expressed their concerns about patients who have permanent sexual, mental and physical side effects after discontinuing finasteride. These physicians have posted information on their websites and have spoken at medical symposiums about the problem of permanent sexual dysfunction from the use of finasteride.

42.   For Example, Dr. John Crisler, a physician at a men's health clinic in Michigan, stated:

I am just totally against finasteride. I have had so many patients that have come to me where that medication has destroyed their life.

...They take finasteride for even as short as a week and it destroys their lives. And they become depressed, weak, impotent and the problem is when they go off the drug their symptoms remains

10

43. Dr. Alan Jacobs, a neuroendocrinologist in New York has a blog addressing issues related to hormones, behavior and the brain at http://alanjacobsmd.typepad.com/alanjacobsmds-blog/. In one of his posts in April 2010 titled "A Neuroendocrine Approach To Finasteride Side Effects In Men," he states:

> I have recently seen an increasing number of men who have developed significant degrees of clinical hypogonadism - low sex drive, erectile dysfunction, reduced sexual sensations and listlessness, fatigue and/or "brain fog" - while either taking finasteride or after stopping the medication, even long after stopping it.

> Finasteride certainly helps men fight hair loss and prostate enlargement. However, a considerable number of men have intolerable and sometimes persistent side effects from the medicine. A systematic neuroendocrine approach to this problem should shed light on the cause in a majority of cases and bring relief.

44. Dr. Andrew Rynne, a physician in Kildare, Ireland, who is a specialist in treating sexual dysfunction, has also spoken out about the risk of using finasteride. On the website for his clinic, he has posted this entry titled "Male Pattern Baldness and Propecia" where he writes about the problems he has seen in his patients who have taken Propecia:

> I want to shout this from the rooftops. However, I will shout it into cyberspace instead. I want the ear of every young man on this planet who may be experiencing testosterone driven male pattern balding. Please listen to me. Do NOT under any circumstances even for one minute consider taking the testosterone-suppressing drug Proscar or Propecia or Finasteride to give it its chemical name. The consequences of using this drug for male pattern balding can be life shattering.

> Here's what the manufacturers Merck say on their Patient's Product Information leaflet about Propecia:

> "In clinical studies for Propecia, a small number of men experienced certain sexual side effects, such as less desire for sex, difficulty in

11

achieving an erection, decrease in the amount semen produced.  Each of these side effects occurred in less than 2% of men and went away in men who stopped taking Propecia because of them."

What jumps out at you here is that figure 2%.  However, even if you accept this figure as true, and personally I do not accept it, but even if you do, to the uninitiated it might seem like a low figure.  But for 2% of men on Proscar to experience serious side effects like erectile dysfunction, loss of libido and reduced volume of semen this is actually a very high and significant figure.

Remember you are dealing here with a naturally occurring normal male phenomenon called "Male Pattern Baldness."  This is not an illness or a disease.  This is a healthy normal occurrence.  If in an attempt to "cure" it, you are getting a 2% rate of serious side effects, then that quite frankly is unacceptable.

But here is the real lie that Merck is giving you in its Patient's Leaflet.  Do you see that bit there about "went away in men who stopped taking Propecia - " That is simply not true and Merck know [sic] full well that it is not true. **They know it is not true because I and hundreds of other doctors and thousands of patients have told them that these side effects do not always go away when you stop taking Propecia.**  We continue to be ignored of course.  Merck is a multi-billion multinational company.  In some cases men who have taken Proscar, even for a few months, have unwittingly condemned themselves to a lifetime of Sexual Anhedonia, the most horrible and cruel or all sexual dysfunctions.

I have spoken to several young men in my clinic in Kildare who continue to suffer from sexual anaesthesia and for whom all sexual pleasure and feelings have been obliterated for all time.  I have felt their suffering and shared their devastation.  If you would like to learn more about this subject then visit them on www.propeciahelp.com.   Please spread the word around.    Taking Propecia for balding can have utterly disastrous consequences. [emphasis added].

45.   In March, 2011, FDA stated that "depression" is a potential adverse reaction to

Propecia.

46.   In a July 2011 editorial appearing in the Journal of Sexual Medicine [J Sex Med

2011;8:1829–1831], Irwin Goldstein, M.D., editor-in-chief of the Journal, stated:

…I think of the frequent phone calls I receive from distressed men with varying degrees of hair loss who have used 5 alpha reductase inhibitors [such as Propecia]

and now have newly manifested sexual and cognitive complaints that often persist despite discontinuation of the 5 alpha reductase inhibitor. Often such 5 alpha reductase inhibitor users have sought help elsewhere only to be belittled, betrayed, misdirected, and sometimes misinformed. In general, these patients feel deceived because of the lack of information warning them of potential sexual side effects. The majority feels strongly that the sexual problems are far worse than the hair loss concerns. A common statement from these individuals: *"If I only knew this could happen . . . why didn't the doctors tell me this was even a remote possibility."* (emphasis in the original).

## FACTUAL ALLEGATIONS SPECIFIC TO
## PLAINTIFF GREGORY JANKOWSKI

47. On or about February, 2000, Plaintiff visited Van Scoy and PAI to inquire about a possible hair transplant and/or hair restoration surgery. It was at Van Scoy's and PAI's advice that Plaintiff be prescribed Propecia for male pattern hair loss and that he take Propecia once per day to maintain the hair that he currently had.

48. Plaintiff used Propecia as directed for male pattern hair loss for approximately 11 years until approximately May, 2011. The vast majority of Plaintiff's prescriptions for Propecia were prescribed by and filled at Van Scoy and PAI. Van Scoy and PAI directly supplied Propecia to Plaintiff.

49. Prior to 2005, Plaintiff would visit Van Scoy and PAI and receive his refills of Propecia. In all of his visits, Plaintiff does not recall ever being handed a prescription for Propecia nor does he recall ever being seen or treated by a physician while at Van Scoy and PAI.

50. After 2005, Plaintiff was instructed by Van Scoy and PAI that a prescription was necessary for a refill of Propecia but he could visit on particular dates – dates on which a physician would be present at that location – to pick up his Propecia refill. Still, Plaintiff does not recall ever being handed a prescription for Propecia nor does

he recall being treated or seen by a physician, but only recalls being sold the Propecia by Van Scoy and PAI.

51.  Plaintiff had never received an adequate warning from Defendants about the risk of persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

52.  To the contrary, Defendants continue to manufacture, label, market, advertise, promote, distribute, sell, and/or supply Propecia without providing clear and adequate warnings to consumers.

53.  Plaintiff would have never taken Propecia had he been warned of those risks associated with the use of Propecia as a treatment for male pattern hair loss.

54.  On or about July 3, 2002, Plaintiff presented to his primary care physician's office after months of using Propecia, reporting sexual dysfunction, including but not limited to, decreased libido; impotence; erectile dysfunction; and mental issues, such as anxiety and depression.

55.  Although Plaintiff first reported these side effects on July 3, 2002 and despite years of testing and physician evaluations, Plaintiff had no information or reason to believe there was a connection between his persistent and/or permanent side effects until he listened to a Cleveland, Ohio radio program in the Spring of 2011 discussing the permanent side effects of Propecia.

56.  As a result of Plaintiff's use of Propecia for male pattern hair loss, Plaintiff has suffered significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased

14

semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

57. Plaintiff will incurred medical, hospital, rehabilitative, and/or pharmaceutical expenses for the rest of his life.

58. As a result of Defendants' conduct and Plaintiff Gregory Jankowski's use of Propecia for male pattern hair loss, Plaintiff sustained persistent and permanent injury and impairment, lives in a constant state of fear and anxiety that his condition will worsen, and is unsure whether his injuries will ever resolve.

## COUNT ONE
## PRODUCT LIABILITY—DEFECTIVE IN DESIGN OR FORMULATION
## O.RC. § 2307.75
**(As to Defendants Merck & Merck Sharp Dohme)**

59. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

60. The Defendants are the designers, testers, manufacturers, marketers, promoters, distributors, and/or sellers of Propecia. At all times material to the allegations in this Complaint, Defendants were engaged in the business of designing, manufacturing, labeling, marketing, promoting, distributing, and selling Propecia and did in fact sell Propecia.

61. Propecia was designed, tested, manufactured, labeled, marketed, promoted, distributed, and/or sold by the Defendants and used by the Plaintiff during the time periods set forth above.

15

62. Defendants manufactured, labeled, marketed, promoted, distributed, sold, and/or otherwise placed into the stream of commerce and/or caused to be placed into the stream of commerce, its product, Propecia.

63. Plaintiff used and was exposed to Defendants' product in the manner intended by Defendants during which time Defendants' product caused the injuries and damages set forth here and above.

64. At the time Defendants designed, tested, manufactured, labeled, distributed, marketed and/or sold Propecia, this product was expected to, and did, reach Plaintiff in a condition without substantial change from that in which such product was when within the possession of the Defendants.

65. When used, Defendants' product failed to perform as safely as Plaintiff expected. The product caused significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

66. Defendants' product was by reason of its design, manufacture, labeling, marketing, and promotion in a condition unreasonably dangerous and/or unavoidably unsafe to users such as Plaintiff, as Defendants' product was dangerous beyond the expectation of the ordinary user/consumer when used as intended or in a manner reasonably foreseeable. Further, the risk of danger to users, such as Plaintiff, outweighed the benefits of the design. Namely, because male pattern hair loss is neither an illness nor a disease, but, rather, a naturally occurring normal male phenomenon, the health risk of persistent and/or permanent sexual dysfunction

16

and/or mental and emotional issues, such as depression and anxiety, outweigh the benefit of potential cosmetic improvement.

67.   Further, Defendants' product was defective in design and formulation in that Defendant failed to adequately warn and/or instruct Propecia users of the unavoidably unsafe aspects of Propecia.

68.   Plaintiff, unaware of the defective and unreasonably dangerous condition of Propecia at the time when such product was being used for the purposes for which it was intended, was exposed to finasteride contained in Defendants' product, making Defendants' product unsafe for use. Each exposure to Defendants' product, which was connected to and incidental to Defendants' manufacture, marketing, promotion, distribution, and/or sale of its product, was harmful and substantially contributed in causing Plaintiff's condition.

69.   Defendants knew that the product would be used without inspection for defects, and by placing it on the market, represented that it would safely do the job for which it was intended.

70.   Before manufacturing, marketing, labeling, distributing, promoting, and/or selling its product to which Plaintiff was exposed, each Defendant knew, or in the exercise of reasonable care should have known, that Plaintiff and/or others similar situated would purchase, use, and be exposed to finasteride from using its product.

71.   At all times material to this cause of action, Defendants' product contained latent characteristics and/or design defects at the time of manufacture and Plaintiff's exposure and each Defendant knew, or should have known, that Plaintiff's exposure to its product was harmful and could cause significant and persistent and/or

17

permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

72.     Each Defendant also knew or should have known that its product would be used by Plaintiff and others similar situated, without inspection for these defects and furthermore, that any such inspection would not have revealed the underlying danger contained in Defendants' product; or that exposure to the same could cause severe injury. Although these facts were known to or readily ascertainable by the Defendants, Plaintiff could not know nor contemplate the dangers of using Propecia in the manner intended, making Propecia inherently and unreasonably dangerous. Defendants had a duty to not expose Plaintiff to health hazards associated with its product.

73.     As a direct and proximate result of Defendants' conduct alleged and described herein, Plaintiff was caused to suffer significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety. Due to these conditions, Plaintiff has required and will require medical treatment, has been greatly inconvenienced in his ability to lead and enjoy a normal life, and has been permanently impaired. As a result of this condition, Plaintiff has suffered and will continue to suffer pain, mental anguish, depression and other mental disorders; has incurred and will continue to incur medical expenses for treatment of physical and mental injuries; and suffered

18

physical handicap and impairment. These injuries are permanent and continuing in nature.

### COUNT TWO
### PRODUCT LIABILITY—DEFECTIVE DUE TO INADEQUATE WARNING OR INSTRUCTION
### O.R.C. § 2307.76
### (As to Defendants Merck & Merck Sharp Dohme)

74.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

75.   The Defendants are the designers, testers, manufacturers, marketers, promoters, distributors, and/or sellers of Propecia. At all times material to the allegations in this Complaint, Defendants were engaged in the business of designing, testing, manufacturing, labeling, marketing, promoting, distributing, and/or selling Propecia and did in fact sell Propecia.

76.   Propecia was designed, tested, manufactured, labeled, marketed, promoted, distributed, and/or sold by the Defendants and used by the Plaintiff during the time periods set forth above.

77.   Defendants designed, tested, manufactured, labeled, marketed, promoted, distributed, sold and/or otherwise placed into the stream of commerce and/or caused to be placed into the stream of commerce, its product, Propecia.

78.   Plaintiff used and was exposed to Defendants' product in the manner intended by Defendants during which time Defendants' product caused the injuries and damages set forth here and above.

79.   At the time Defendants designed, tested, manufactured, labeled, marketed, promoted, distributed, and/or sold Propecia, this product was expected to, and did,

reach Plaintiff in a condition without substantial change from that in which such product was when within the possession of the Defendants.

80. Defendants had a duty to adequately warn consumers of the risks it knew or should have known were associated with the use of Propecia.

81. When used, Defendants' product failed to perform as safely as Plaintiff expected and its risks outweighed its benefits. Namely, the health risk of persistent and/or permanent sexual dysfunction and/or mental and emotional issues, such as depression and anxiety, outweigh the benefit of potential cosmetic improvement. The product used for male pattern hair loss caused significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

82. Defendants knew or should have known in the exercise of reasonable care that Propecia can cause significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

83. Defendant breached its duty by failing to adequately warn users and consumers, like Plaintiff, of the risks Defendants knew or should have known would were associated with the use of Propecia, namely, significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

20

84.   Defendants' product was in a defective condition and unreasonably dangerous in that Defendants failed to provide adequate warnings to Plaintiff of the reasonably foreseeable risk associated with the use of Propecia and of a user's exposure to the finasteride in Propecia—namely significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

85.   Defendants failed to provide adequate warnings and/or instructions that a manufacturer exercising reasonable care would have provided concerning the risk associated with the use of Propecia and of a user's exposure to the finasteride in Propecia—namely significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

86.   Additionally, Propecia was defective because Defendants failed to provide adequate post-market warnings and/or instructions to consumers after the product was marketed by Defendants where Defendants learned or reasonably should have learned about the serious risk of significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

87.   Plaintiff, unaware of the defective and unreasonably dangerous condition of Propecia at the time when such product was being used for the purposes for which it

21

was intended, was exposed to finasteride contained in Defendants' product, making Defendants' product unsafe for use. Each exposure to Defendants' product, which was connected to and incidental to Defendants' manufacture, marketing, promotion distribution, and/or sale of its product, was harmful and substantially contributed in causing Plaintiff's injuries.

88. Defendants knew that the product would be used without inspection for defects, and by placing it on the market, represented that it would safely do the job for which it was intended.

89. Before designing, manufacturing, marketing, labeling, distributing, promoting, and/or selling its product to which Plaintiff was exposed, each Defendant knew, or in the exercise of reasonable care should have known, that Plaintiff and/or others similar situated would purchase, use, and be exposed to finasteride from using its product and experience the harmful sexual side effects and mental and emotional issues as a result of using Propecia.

90. At all times material to this cause of action, Defendants' product contained latent characteristics and/or design defects at the time of manufacture and Plaintiff's exposure and each Defendant knew, or should have known, that Plaintiff's exposure to their product was harmful and could cause significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

91. Each Defendant also knew or should have known that its product would be used by Plaintiff and others similar situated, without inspection for these defects and

22

furthermore, that any such inspection would not have revealed the underlying danger contained in Defendants' product; or that exposure to the same could cause severe injury. Although these facts were known to or readily ascertainable by the Defendants, Plaintiff could not know nor contemplate the dangers of using Propecia in the manner intended, making Propecia inherently and unreasonably dangerous. Defendants had a duty to not expose Plaintiff to health hazards associated with its product.

92. As a direct and proximate result of Defendants' conduct alleged and described herein, Plaintiff was caused to suffer significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety. Due to these conditions, Plaintiff has required and will require medical treatment, has been greatly inconvenienced in his ability to lead and enjoy a normal life, and has been permanently impaired. As a result of this condition, Plaintiff has suffered and will continue to suffer pain, mental anguish, depression and other mental disorders; has incurred and will continue to incur medical expenses for treatment of physical and mental injuries; and suffered physical handicap and impairment. These injuries are permanent and continuing in nature.

**COUNT THREE**
**PRODUCT LIABILITY—DEFECTIVE DUE**
**TO NONCONFORMANCE WITH**
**MANUFACTURERS' REPRESENTATIONS**
**O.R.C. § 2307.77**
**(As to Defendants Merck & Merck Sharp Dohme)**

93.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

94.   The Defendants are the designers, testers, manufacturers, marketers, promoters, distributors, and/or sellers of Propecia. At all times material to the allegations in this Complaint, Defendants were engaged in the business of designing, testing, manufacturing, labeling, marketing, promoting, distributing, and/or selling Propecia and did in fact sell Propecia.

95.   Propecia was designed, tested, manufactured, labeled, marketed, promoted, distributed, and/or sold by the Defendants and used by the Plaintiff during the time periods set forth above.

96.   Defendants manufactured, labeled, marketed, promoted, distributed, sold and/or otherwise placed into the stream of commerce and/or caused to be placed into the stream of commerce, its product, Propecia.

97.   Plaintiff used and was exposed to Defendants' product in the manner intended by Defendants during which time Defendants' product caused the injuries and damages set forth here and above.

98.   At the time Defendants designed, manufactured, labeled, marketed, promoted, distributed, and/or sold Propecia, this product was expected to, and did, reach Plaintiff in a condition without substantial change from that in which such product was when within the possession of the Defendants.

99. When used, Defendants' product failed to perform as safely as Plaintiff expected and as safely as represented by Defendants.

100. Plaintiff, unaware of the defective and unreasonably dangerous condition of Propecia at the time when such product was being used for the purposes for which it was intended, was exposed to finasteride contained in Defendants' product, making Defendants' product unsafe for use. Each exposure to Defendants' product, which was connected to and incidental to Defendants' manufacture, marketing, promotion, distribution, and/or sale of its product, was harmful and substantially contributed in causing Plaintiff's condition.

101. Defendants knew that the product would be used without inspection for defects, and by placing it on the market, represented that it would safely do the job for which it was intended.

102. Before designing, manufacturing, marketing, labeling, promoting, distributing, and/or selling its product to which Plaintiff was exposed, each Defendant knew, or in the exercise of reasonable care should have known, that Plaintiff and/or others similar situated would purchase, use and be exposed to finasteride from using its product.

103. At all times material to this cause of action, Defendants' product contained latent characteristics and/or design defects at the time of manufacture and Plaintiff's exposure and each Defendant knew, or should have known, that Plaintiff's exposure to their product was harmful and could cause significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased

libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

104. Each Defendant also knew or should have known that its product would be used by Plaintiff and others similar situated, without inspection for these defects and furthermore, that any such inspection would not have revealed the underlying danger contained in Defendants' product; or that exposure to the same could cause severe injury. Although these facts were known to or readily ascertainable by the Defendants, Plaintiff could not know nor contemplate the dangers of using Propecia in the manner intended, making Propecia inherently and unreasonably dangerous. Defendants had a duty to not expose Plaintiff to health hazards associated with their product.

105. When it left Defendants' control, Propecia, as designed, tested, manufactured, labeled, marketed, promoted, distributed, and/or sold by Defendants was not reasonably safe because Propecia failed to conform to the Defendants' representations as to the safety of its product. For instance, Defendants' expressly represented to consumers like Plaintiff that certain side-effects, such as sexual dysfunction, including but not limited to, decreased libido; erectile dysfunction; decrease in semen output; were not persistent and permanent and "went away in men who stopped taking Propecia."

106. Defendants' representations as to the safety of Propecia, particularly that certain side-effects, such as sexual dysfunction, including, but not limited to, decreased libido; erectile dysfunction; decrease in semen output; were not persistent and/or permanent and "went away in men who stopped taking Propecia," were material

facts concerning the product and were justifiably relied upon by Plaintiff. Plaintiff would not have used Propecia if he knew the risk of sexual dysfunction was persistent and/or permanent after discontinuation of the product, despite Defendants' representations to the contrary.

107. Defendants are subject to liability for such representations and the failure to conform to them even if Defendants did not act fraudulently, recklessly, or negligently in making the representation.

108. As a direct and proximate result of Plaintiff's justifiable reliance on Defendants' representations regarding the safety of Propecia, Plaintiff suffered significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety. Due to these conditions, Plaintiff has required and will require medical treatment, has been greatly inconvenienced in his ability to lead and enjoy a normal life, and has been permanently impaired. As a result of this condition, Plaintiff has suffered and will continue to suffer pain, mental anguish, depression and other mental disorders; has incurred and will continue to incur medical expenses for treatment of physical and mental injuries; and suffered physical handicap and impairment. These injuries are permanent and continuing in nature.

## COUNT FOUR
## SUPPLIER LIABILITY
## O.R.C. § 2307.78
### (As to Defendants Van Scoy and PAI)

109. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

27

110. Defendants Van Scoy and PAI are suppliers of the drug Propecia that is the subject of this Complaint as defined under O.R.C. § 2307.71 in that Van Scoy and PAI are not the manufacturer of Propecia but sold, distributed, and/or otherwise placed Propecia into the stream of commerce. Defendants Van Scoy and PAI directly supplied Propecia to Plaintiff.

111. Defendants are liable as suppliers under O.R.C. § 2307.78 as Defendants were negligent in its marketing, promotion, distribution, sale, and/or supply of Propecia and that negligence was a direct and proximate cause of harm for which the Plaintiff seeks to recover compensatory damages.

112. Specifically, in violation of O.R.C. § 2307.78(A)(1), Defendants were negligent in breaching their duties and in failing to exercise reasonable care, as follows:

    a. In failing to warn Plaintiff and customers like Plaintiff of the risks Defendants knew or should have known were associated with Propecia, namely persistent and/or permanent sexual dysfunction and effects and emotional and mental issues;

    b. In promoting Propecia to Plaintiff and customers like Plaintiff without providing adequate warnings and/or instructions regarding the risks Defendants knew or should have known were associated with Propecia;

    c. In supplying, distributing, and/or otherwise placing into the stream of commerce Propecia without providing adequate warnings and/or instructions to Plaintiff and consumers like Plaintiff regarding the risks Defendants knew or should have known were associated with Propecia;

    d. In continuing to promote, distribute, sell, supply and/or otherwise place into the stream of commerce Propecia when Defendants knew, or should have known, at the time of promotion, distribution, sale, supply, and/or placement into the stream of commerce that Propecia caused injuries, including persistent and/or permanent sexual dysfunction and effects and mental and emotional issues, to those persons exposed to the product;

    e. In failing to provide adequate warnings or instructions where Defendants learned or where a reasonably prudent supplier should have learned about a danger connected with the product;

     f.  In affirmatively misrepresenting to Plaintiff that Propecia was safe in its ordinary and foreseeable use, which material misrepresentation induced Plaintiff to unknowingly expose himself to the hazards of developing injuries;

     g.  In failing to take reasonable precautions or exercise reasonable care in advertising, promoting, distributing, selling, supplying, and/or otherwise placing into the stream of commerce Propecia to Plaintiff and consumers like Plaintiff.

113. Further, in violation of O.R.C. § 2307.78(A)(2), Propecia failed to conform, when it left the control of Van Scoy and PAI, as the suppliers of Propecia, to representations made by Van Scoy and PAI.

114. Under O.R.C. § 2307.78(A)(2), Defendants Van Scoy and PAI are subject to liability for such representations and the failure to conform to them even if Van Scoy and PAI did not act fraudulently, recklessly, or negligently in making the representation.

115. As a direct and proximate result of Defendant's conduct and representations alleged and described herein, Plaintiff was caused significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety. Due to these conditions, Plaintiff has required and will require medical treatment, has been greatly inconvenienced in his ability to lead and enjoy a normal life, and has been permanently impaired. As a result of this condition, Plaintiff has suffered and will continue to suffer pain, mental anguish, depression and other mental disorders; has incurred and will continue to incur medical expenses for treatment of physical and

mental injuries; and suffered physical handicap and impairment. These injuries are permanent and continuing in nature.

## COUNT FIVE
## NEGLIGENCE
### (As to All Defendants)

116. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

117. The Defendants are the designers, testers, manufacturers, marketers, promoters, distributor, sellers, and/or suppliers of Propecia.   At all times material to the allegations in this Complaint, Defendants were engaged in the business of designing, testing, manufacturing, labeling, marketing, promoting, distributing, selling and/or supplying Propecia and did in fact sell and supply Propecia.

118. Defendants designed, tested, manufactured, labeled, marketed, promoted, distributed, sold, supplied and/or otherwise placed into the stream of commerce and/or caused to be placed into the stream of commerce Propecia.

119. At all times material to the allegations in this Complaint, Defendants had a duty to use reasonable care in the design, formulation, testing, manufacture, labeling, marketing, promotion, distribution, sale, and/or supply of Propecia, including but not limited to, a duty to ensure that Propecia did not pose an unreasonably risk of persistent and/or permanent sexual dysfunction and risk of mental and emotional issues, such as depression and anxiety.

120. Plaintiff used and was exposed to Defendants' product in the manner intended by Defendants during which time Defendants' product caused the injuries and damages set forth here and above.

121. At the time Defendants designed, tested, manufactured, labeled, marketed, promoted, distributed, sold, and/or supplied Propecia, this product was expected to, and did, reach Plaintiff in a condition without substantial change from that in which such product was when within the possession of the Defendants.

122. When used, Defendants' product failed to perform as safely as Plaintiff expected. The product caused significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

123. Specifically, the Defendants were negligent in breaching their duties and in failing to exercise reasonable care, the same being the direct and proximate cause of Plaintiff's injuries, as follows:

   a. In failing to adequately warn Plaintiff of the dangerous characteristics of its' product in that Defendants failed to warn Plaintiff that he could develop permanent and lasting sexual dysfunction and effects and emotional and mental issues from the use of Propecia;

   b. In failing to place adequate warnings in promotional literature, on packaging, and on their websites, to warn of the dangers to one's health from the use of Propecia and of the risk and extent of danger that Plaintiff was exposing himself by using Propecia;

   c. In failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of using Propecia;

   d. In continuing to manufacture, market, promote, distribute, sell, and/or supply Propecia when Defendants knew, or should have known, at the time of manufacture, marketing, promotion, distribution, sale, and/or supply of Propecia that it caused injuries, including persistent and/or permanent sexual dysfunction and effects and mental and emotional issues, to those persons exposed to the product;

   e. In failing to provide adequate warnings or instructions after the product was manufactured where Defendants learned or where a reasonably prudent

31

manufacturer should have learned about a danger connected with the product after it was manufactured;

f.  In affirmatively misrepresenting to Plaintiff that Propecia was safe in its ordinary and foreseeable use, which material misrepresentation induced Plaintiff to unknowingly expose himself to the hazards of developing injuries;

g.  In failing to adequately test their product before offering them for sale and use so that Plaintiff would know the risks associated with Propecia and would not expose himself to the injuries he sustained;

h.  In failing to take reasonable precautions or exercise reasonable care in supplying Propecia to consumers like Plaintiff;

i.  In failing to take reasonable precautions or exercise reasonable care in advertising, marketing, promoting and/or distributing Propecia.

124.  The aforementioned injuries and disabilities of Plaintiff are and will be the direct and proximate cause of the negligence of the Defendants in that Defendants designed, manufactured, labeled, marketed, promoted, distributed, sold, supplied and/or otherwise placed into the stream of intrastate and/or interstate commerce, a product which Defendants knew, or in the exercise of ordinary care should have known, were deleterious and highly harmful to Plaintiff's health and living, and yet did nothing to advise the Plaintiff of this information.

125.  As a direct and proximate result of Defendants' conduct alleged and described herein, Plaintiff was caused significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety. Due to these conditions, Plaintiff has required and will require medical treatment, has been greatly inconvenienced in his ability to lead and enjoy a normal life, and has been permanently impaired. As a result of this condition, Plaintiff has suffered and will continue to suffer pain, mental anguish,

depression and other mental disorders; has incurred and will continue to incur medical expenses for treatment of physical and mental injuries; and suffered physical handicap and impairment. These injuries are permanent and continuing in nature.

**COUNT SIX**
**BREACH OF EXPRESS WARRANTIES**
**O.R.C. § 1302.26**
**(As to All Defendants)**

126. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

127. Defendants designed, tested, labeled, manufactured, marketed, promoted, distributed, sold and/or supplied into the stream of commerce Propecia.

128. At the time Defendants designed, tested, labeled, manufactured, marketed, promoted, distributed, sold, supplied and/or otherwise placed Propecia into the stream of commerce, Defendants knew the use for which Propecia was intended, particularly, for the treatment of male pattern hair loss, and expressly warranted that Propecia was safe for such use.

129. Defendants expressly warranted by affirmations of fact and/or promises that Propecia was safe when used as directed, and, particularly, that any sexual dysfunction caused by the use of Propecia would be temporary and "went away in men who stopped taking Propecia."

130. Further, Defendants expressly warranted in their description of Propecia that it was safe when used as directed and, particularly, that any sexual dysfunction caused by the use of Propecia would be temporary and "went away in men who stopped taking Propecia."

33

131.   These affirmations of fact and/or promises and descriptions made by Defendants became part of the basis for the bargain for Plaintiff in determining whether to purchase and use Propecia for male pattern hair loss.

132.   Propecia did not conform to the affirmations of fact and/or promises and descriptions made by Defendants, particularly those made by Defendants Merck in that any sexual dysfunction did not "[go] away" once use of Propecia was discontinued.  In fact, Plaintiff continues to suffer significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety, as a result of using Propecia, even after discontinuation of the use of Propecia.

133.   As a direct and proximate result of Defendants' conduct alleged and described herein, Plaintiff was caused to suffer significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.   Due to these conditions, Plaintiff has required and will require medical treatment, has been greatly inconvenienced in his ability to lead and enjoy a normal life, and has been permanently impaired.  As a result of this condition, Plaintiff has suffered and will continue to suffer pain, mental anguish, depression and other mental disorders; has incurred and will continue to incur medical expenses for treatment of physical and mental injuries; and suffered physical handicap and impairment. These injuries are permanent and continuing in nature.

**COUNT SEVEN**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**O.R.C. § 1302.27**
**(As to All Defendants)**

134. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

135. Defendants designed, tested, manufactured, labeled, marketed, promoted, distributed, sold, supplied and/or otherwise placed into the stream of commerce Propecia.

136. At the time Defendants designed, manufactured, labeled, marketed, promoted, distributed, sold, supplied and/or otherwise placed into the stream of commerce Propecia, Defendants knew the use for which Propecia was intended, particularly, for the treatment of male pattern hair loss, and impliedly warranted the Propecia to be of merchantable quality and safe for such use.

137. Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether Propecia was of merchantable quality and safe for their intended use.

138. Contrary to Defendants' implied warranties, Propecia was not of merchantable quality or safe for its intended use, was not adequately packaged or labeled, and did not conform to the promises and affirmations of fact made by Defendants.

139. As a direct and proximate result of Defendants' conduct alleged and described herein, Plaintiff was caused to suffer significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety. Due to these conditions, Plaintiff has required and will require medical treatment, has been greatly inconvenienced in his

35

ability to lead and enjoy a normal life, and has been permanently impaired. As a result of this condition, Plaintiff has suffered and will continue to suffer pain, mental anguish, depression and other mental disorders; has incurred and will continue to incur medical expenses for treatment of physical and mental injuries; and suffered physical handicap and impairment. These injuries are permanent and continuing in nature.

### COUNT EIGHT
### INTENTIONAL MISREPRESENTATION
### (As to All Defendants)

140. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

141. At all times material to this action, Defendants were engaged in the business of designing, testing, manufacturing, labeling, marketing, promoting, distributing, selling, supplying, and/or otherwise placing into the stream of commerce a product known as Propecia.

142. Defendants Merck distributed Propecia to wholesale outlets and retail outlets, such as Defendants Van Scoy and PAI, for sale to the general public in the State of Ohio for use as a treatment for male pattern hair loss. Defendant Van Scoy and PAI supplied Propecia to Plaintiff and consumers like Plaintiff.

143. Defendants had the duty to provide truthful, adequate, and accurate representations regarding the safety of Propecia to the general public, including Plaintiff, as the designers, testers, manufacturers, marketers, promoters, distributors, sellers, and/or suppliers of Propecia.

36

144. Further, Defendants had a duty as manufacturers and/or suppliers of Propecia to disclose the risks associated with the use of Propecia and/or refrain from misrepresenting those same risks.

145. Defendants, acting through their officers, agents, servants, representatives, or employees, intentionally misrepresented and/or concealed the material fact that Propecia could cause serious adverse sexual events and side effects, including permanent and persistent sexual dysfunction, and mental and emotional issues, even after discontinuation of use.  For example, Defendants Merck stated that any sexual dysfunction caused from the use of Propecia "went away in men who stopped taking Propecia."

146. These material misrepresentations and/or omissions were made under circumstances in which Defendants, acting through their officers, agents, servants, representatives, or employees, knew that the various facts of those misrepresentations and/or omissions were not true or were made with such utter disregard and recklessness as to whether they were true or false that knowledge may be inferred.

147. The material misrepresentations and/or omissions alleged herein were reiterated and disseminated by Defendants' officers, agents, servants, representatives or employees acting within the course and scope of their authority to merchandise, market, promote, distribute, sell, and/or supply Propecia.

148. These material misrepresentations and/or omissions concerning Propecia were set forth in product literature and/or on Defendants' websites, information delivered by Defendants to the general public, including Plaintiff.

149. These material misrepresentations and/or omissions concerning Propecia were made with the intent that customers, such as Plaintiff, would rely upon them in purchasing Propecia.

150. Plaintiff did not know that Defendants' material misrepresentations and/or omissions were untrue, incomplete, or lacking material information.

151. Plaintiff, in justifiable reliance on the truth of the representations in Defendants' promotional materials and/or omissions, purchased and used Propecia in accordance with Defendants' instructions.   Specifically, Plaintiff relied upon Defendants statement that any sexual dysfunction would "[go] away" once the use of Propecia was discontinued.

152. Plaintiff justifiably relied upon the misrepresentations and/or omissions of Defendants.  Such reliance was rightful under the circumstances as Plaintiff was in a position in which such material misrepresentations and/or omission were directed.

153. While using Propecia for treatment of male pattern baldness, and as a result of Defendants' misrepresentations, Plaintiff suffered significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

154. The failure of Defendants to truly and adequately represent the known effects of Propecia, and to misrepresent such known effects, was a direct and proximate cause of the above injuries suffered by Plaintiff.  Plaintiff justifiably relied on Defendants' product information, warnings, and representations.   Except for the falsity of

Defendants' representations and/or omissions, Plaintiff would never have sustained the injuries alleged herein.

155. As a direct and proximate result of Defendants' conduct alleged and described herein, Plaintiff was caused to suffer significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety. Due to these conditions, Plaintiff has required and will require medical treatment, has been greatly inconvenienced in his ability to lead and enjoy a normal life, and has been permanently impaired. As a result of this condition, Plaintiff has suffered and will continue to suffer pain, mental anguish, depression and other mental disorders; has incurred and will continue to incur medical expenses for treatment of physical and mental injuries; and suffered physical handicap and impairment. These injuries are permanent and continuing in nature.

## COUNT NINE
## NEGLIGENT MISREPRESENTATION
### (As to All Defendants)

156. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

157. At all times material to this action, Defendants were engaged in the business of designing, testing, manufacturing, labeling, marketing, promoting, distributing, selling, supplying and/or otherwise placing into the stream of commerce a product known as Propecia.

158. Defendants Merck distributed Propecia to wholesale outlets and retail outlets, such as Defendants Van Scoy and PAI, for sale to the general public in the State of Ohio for use as a treatment for male pattern hair loss. Defendants Van Scoy and PAI supplied Propecia to Plaintiff and consumers like Plaintiff.

159. Plaintiff is a member of the general public for whose use as an ultimate consumer Propecia was manufactured, labeled, marketed, promoted, distributed, sold, and/or supplied by Defendants.

160. Defendants had the duty to provide truthful, adequate, and accurate representations regarding the risks Defendants knew or should have known were associated with Propecia to the general public, including Plaintiff, as the manufacturers, marketers, promoters, distributors, sellers and/or suppliers of Propecia.

161. Further, Defendants had a duty as manufacturers and/or suppliers of Propecia to disclose the risks that Defendants knew or should have known were associated with the use of Propecia and/or refrain from misrepresenting those same risks Defendants knew or should have known were associated with Propecia.

162. Defendants, acting through their officers, agents, servants, representatives, or employees, negligently and recklessly misrepresented and/or concealed the material fact that Propecia could cause serious adverse sexual events and side effects, including permanent and persistent sexual dysfunction, and mental and emotional issues, even after discontinuation of use. These misrepresentations and/or omissions were made under circumstances in which Defendants, acting through their officers, agents, servants, representatives, or employees, either knew, or in the exercise of

40

reasonable care, should have known, that the various facts of those misrepresentations and/or omissions were not true.

163. Defendants failed to use reasonable care or competence in obtaining or communicating the risks associated with the use of Propecia, namely, significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

164. The misrepresentations and/or omissions alleged above were reiterated and disseminated by Defendants' officers, agents, servants, representatives or employees acting within the course and scope of their authority to merchandise, market, promote, sell, and/or supply Propecia.

165. These misrepresentations and/or omissions concerning Propecia were set forth in product literature and/or Defendants' websites, information delivered by Defendants to Plaintiff and to the general public.

166. Plaintiff, in reliance on the truth of the representations and/or omissions in Defendants' promotional material, used Propecia in accordance with Defendants' instructions.

167. Plaintiff justifiably relied upon the misrepresentations and/or omissions of Defendants. Such reliance was reasonable under the circumstances as Plaintiff was in a position in which such material misrepresentations and/or omission were directed.

168. While using Propecia for treatment of male pattern baldness, and as a result of Defendants' misrepresentations, Plaintiff suffered significant and persistent and/or

41

permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety.

169. The failure of Defendants to truly represent the effects of Propecia Defendants knew or should have known, and/or to misrepresent such effects Defendants knew or should have known, were a direct and proximate cause of the injuries suffered by Plaintiff. Plaintiff justifiably relied on Defendants' product information, warnings, and representations. Except for the falsity of Defendants' representations, Plaintiff would never have sustained the injuries alleged herein.

170. As a direct and proximate result of Defendants' conduct alleged and described herein, Plaintiff was caused to suffer significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of sexual sensation; decreased semen output; testicular pain; and mental and emotional issues, such as depression and anxiety. Due to these conditions, Plaintiff has required and will require medical treatment, has been greatly inconvenienced in his ability to lead and enjoy a normal life, and has been permanently impaired. As a result of this condition, Plaintiff has suffered and will continue to suffer pain, mental anguish, depression and other mental disorders; has incurred and will continue to incur medical expenses for treatment of physical and mental injuries; and suffered physical handicap and impairment. These injuries are permanent and continuing in nature.

## COUNT TEN
## VIOLATION OF THE
## OHIO CONSUMER SALES PRACTICES ACT
## O.R.C. §§ 1345.02 & 1345.03
### (As to All Defendants)

171. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

172. Defendants Merck began marketing Propecia in 1998 with an aggressive and deceptive promotional campaign directed at consumers.

173. Defendants were aware of the potential for sexual dysfunction side effects through internal studies and through research and analysis of the effects of Propecia use from outside sources.

174. When promoting Propecia to consumers, including Plaintiff, Defendants materially misrepresented the safety of Propecia and the effects known by Defendants to occur from such use.

175. Defendants misrepresented the safety of Propecia in order to gain acceptance of the product and to increase the sales of Propecia.

176. For the entire period of time Propecia has been on the market, Defendants' advertisements and promotional activities misrepresented Propecia's safety and failed to include information known to Defendants.

177. In violation of O.R.C. §§1345.02 and 1345.03, Defendants, in the regular course of their business, have represented that their goods and/or services are of a particular standard, quality, and/or grade when Defendants know or should have known that such goods and/or services are of another.

43

178. Also, in violation of O.R.C. §§1345.02 and 1345.03, Defendants, in the regular course of their business, have represented that their goods and/or services have performance characteristics and/or benefits when Defendants know or should have known that such goods and/or services are of another.

179. Further, Defendants committed unconscionable acts and/or practices by making misleading statements concerning Propecia which consumers, like Plaintiff, would rely on to their detriment—particularly those made by Defendants Merck that any sexual dysfunction experienced while taking Propecia would "[go] away" once use of Propecia was discontinued. O.R.C. § 1345.03.

180. Defendants' deceptive misrepresentations and omissions regarding the side effects of Propecia were likely to induce in the mind of a consumer beliefs which were not in accord with the facts and likely to induce reliance by consumers, such as Plaintiff, to their detriment. Defendants' actions resulted in Plaintiff's purchasing and use of Propecia.

181. For example, Defendants Merck made deceptive and untrue statements that any sexual side effect would "[go] away" once a consumer discontinued use of Propecia. This statement was made to induce in consumers' a state of mind that was not accord with facts—namely, that if any sexual dysfunction was experienced while taking the drug, it would "[g]o away" upon discontinuation of Propecia and thus such sexual dysfunction was temporary and not permanent.

182. Further, Defendants failed to disclose material information concerning Propecia, which information was known at the time of the advertisement, promotion, distribution, sale and/or supply of the product, when such failure to disclose such

44

information was intended to induce consumers to enter a transaction (to purchase

Propecia), in violation of §§1345.02 and 1345.03 O.R.C., by, among other things:

    a. Failing to disclose to the public and consumers like Plaintiff Defendants' knowledge of the potential adverse and harmful effects of consuming Propecia;

    b. Failing to disclose to government authorities and to the public, important scientific information regarding Defendants' studies of Propecia;

    c. Failing to provide the public with complete information concerning the potential harmful effects of Propecia including the failure to provide the same warnings and instructions to U.S. consumers, such as Plaintiff, that Defendants provided to foreign purchasers and consumers of Propecia.

183. Additionally, in the regular course of its business, Defendants knowingly made false

representations as to the characteristics, uses, or benefits of Propecia, in violation of

§§1345.02 and 1345.03 O.R.C., by, among other things:

    a. Misrepresenting, directly or by omission, the impact of Propecia on its consumers sexual function and mental and emotion state;

    b. Misrepresenting and/or prohibiting the dissemination of Defendants' scientific information regarding their knowledge about and studies of Propecia.

184. By means of the above-described deceptive trade practices, Defendants have unlawfully acquired money from numerous Ohio residents.

185. All practices, acts and omissions alleged herein were committed by Defendants' officers, directors, employees or agents who at all times acted on behalf of Defendants and whose practices, acts or omissions were authorized by Defendants.

186. As a direct and proximate result of Defendants' practices, acts, omissions, and misrepresentations, Plaintiff suffered significant and persistent and/or permanent injuries, including, but not limited to, erectile dysfunction; decreased libido; loss of

sexual sensation; decreased semen output; testicular pain; mental and emotional issues, such as depression and anxiety; and pecuniary damages.

## COUNT ELEVEN
### UNJUST ENRICHMENT
### (As to All Defendants)

187. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

188. Through his purchase and use of Propecia, Plaintiff has conferred an economic benefit, via monetary payments, upon Defendants.

189. Defendants appreciated and knew of the economic benefit conferred upon them through Plaintiff's purchase and use of Defendants' product and accepted and retained such benefits despite Defendants' wrongful conduct detailed above.

190. Acceptance or retention by Defendants of the economic benefit under such circumstances makes it inequitable for the Defendants to retain the benefit without payment.

## COUNT TWELVE
### PUNITIVE OR EXEMPLARY DAMAGES
### O.R.C. § 2307.80
### (As to All Defendants)

191. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

192. Pursuant to O.R.C. § 2307.80, because Defendants are guilty of misconduct that manifests a flagrant disregard of the safety of the public and consumers, such as Plaintiff, who might be harmed by Propecia and/or committed willful acts and omissions, gross neglect, and malice, punitive or exemplary damages should be assessed against Defendants in an amount deemed appropriate by the jury.

## RELIEF SOUGHT

WHEREFORE, Plaintiff, Gregory Jankowski requests judgment against the Defendants in an amount to be determined at trial to include, but not be limited to, compensatory damages; incidental, consequential, or special damages; damages under the Ohio Consumer Sales Practices Act; punitive or exemplary damages; attorney's fees and expenses; costs and interest and such other and further relief as the Court deems just.    The amount is in excess of $25,000.00.

Dated this **3** day of February, 2012.

Respectfully submitted,

Theodore E Laszlo, Jr. (OH #0009551)
Jeffrey O. Klein (OH #0082724)
Laszlo & Associates, LLC
2595 Canyon Blvd., Ste. 210
Boulder, Colorado 80302
303.926.0410
303.443.0758 (fax)
tlaszlo@laszlolaw.com
jklein@laszlolaw.com

*COUNSELS FOR PLAINTIFF*

## JURY TRIAL DEMAND

Please take notice that Plaintiff demands a trial by jury as to all issues in the above matter.

Theodore E Laszlo, Jr.

Counsel for Plaintiff

47